# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| PERMA-LINER INDUSTRIES, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 20-409-RGA |
| | ) |
| GERALD D'HULSTER, | ) |
| | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Scott A. Holt and Alberto E. Chavez, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE. *Counsel for Plaintiff.*

Scott G. Wilcox, MOORE AND RUTT, P.A., Wilmington, DE, Robert D. Eckard, LAW OFFICE OF ROBERT ECKARD & ASSOCIATES, P.A., Palm Harbor, FL. *Counsel for Defendant.*

March 12, 2021
Wilmington, DE

/s/ Richard G. Andrews
**ANDREWS, U.S. DISTRICT JUDGE:**

Plaintiff Perma-Liner Industries, LLC has filed suit against its former president Defendant Gerald D'Hulster alleging breach of several restrictive covenants, misappropriation of trade secrets, and tortious interference with prospective business relations.  Currently pending before the Court is D'Hulster's motion to transfer this action pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Middle District of Florida.  (D.I. 17).[1]  Also pending before the Court is D'Hulster's motion to dismiss the amended complaint (D.I. 31), Perma-Liner's motion for a preliminary injunction (D.I. 33), and D'Hulster's motion to stay briefing on Perma-Liner's motion for preliminary injunction (D.I. 38).

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.  For the reasons that follow, the Court will grant D'Hulster's motion to transfer.  Accordingly, the Court will not decide the other pending motions, but will dismiss them with leave to refile in the transferee district.

## I.   BACKGROUND

D'Hulster resides in St. Pete Beach, Florida.  (D.I. 26 ¶ 7).  Perma-Liner is a Delaware limited liability company with a principal place of business in Clearwater, Florida.  (*Id*. at ¶ 6).  Perma-Liner is in the business of designing, manufacturing and distributing products used in relining wastewater pipes for residential and municipal customers.  (*Id*. at ¶ 11).

During D'Hulster's employment with Perma-Liner, the parties executed four agreements containing essentially identical restrictive covenants: an Employment and Noncompetition Agreement (the "Employment Agreement") dated December 28, 2012, a Noncompetition,

---

[1]    Briefing on the motion to transfer is complete.  (*See* D.I. 17, 24, 25).

Nonsolicitation, Noninterference and Nondisparagement Agreement (the "Seller Covenant Agreement") also dated December 28, 2012, an Equity Appreciation Rights Agreement (the "EARA Agreement") dated April 30, 2015, and, finally, an EARA Cancellation Acknowledgement and Release (the "EARA Cancellation Agreement") dated April 9, 2019.  (*Id*. at ¶¶ 20, 27, 32, 40).  The parties executed the last agreement, the EARA Cancellation Agreement, in connection with a change of control transaction whereby Perma-Liner was merged into and became a wholly-owned subsidiary of Waterline Renewal Technologies, Inc. ("Waterline").  (*Id*. at ¶¶ 36-37).

In general, the restrictive covenants prohibit D'Hulster from engaging in any competing business and soliciting any suppliers, vendors, or employees that transacts business with or are employed by Perma-Liner.  (D.I. 26-1, Ex. 1 § 7, Ex. 2 § 1, Ex. 3 § 5, Ex. 4 § 7).  In addition, and pertinent to the instant motion, the Employment Agreement and the Seller Covenant Agreement contain a choice of law and forum selection clause in favor of Florida.  (D.I. 26-1, Ex. 1 § 14, Ex. 2 § 6).  Meanwhile, the EARA Cancellation Agreement contains a choice of law and forum selection clause in favor of Delaware.  (D.I. 26-1, Ex. 4 § 10).  Finally, the EARA Agreement contains neither a choice of law clause nor a forum selection clause.  (D.I. 26-1, Ex. 3).

The same month as the merger, April 2019, D'Hulster resigned from Perma-Liner.  (D.I. 26 at ¶¶ 51).  Less than a year later, D'Hulster founded Paramount Pipe Lining Products, LLC ("Paramount"), a California limited liability company with a principal place of business in Clearwater, Florida.  (*Id*. at ¶¶ 52-53).  Perma-Liner alleges that Paramount is a competing business and, therefore, violates the restrictive covenants in the four agreements.  (*Id*. at ¶¶ 97-98).  Perma-Liner also alleges that D'Hulster hired several Perma-Liner employees and solicited several Perma-Liner customers in further violation of the restrictive covenants.  (*Id*. at ¶ 101).

In March 2020, Perma-Liner commenced this action in the Court of Chancery for the State of Delaware seeking a temporary restraining order ("TRO") to enjoin D'Hustler from breaching the restrictive covenants.   D'Hulster removed the case to this Court and, on April 13, 2020, the Court denied Perma-Liner's motion for a TRO.  (D.I. 23).

## II.   DISCUSSION

Under 28 U.S.C. § 1404(a), a district court may transfer a civil action to another district where the case might have been brought, or to which the parties have consented, "for the convenience of the parties and witnesses" and "in the interest of justice."  To determine whether transfer would serve the interests of convenience and justice, courts balance several private and public interest factors.  *In re: Howmedica Osteonics Corp*, 867 F.3d 390, 401 (3d Cir. 2017).  The private interest factors are: (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the location of books and records.  *Mallinckrodt, Inc. v. E-Z-Em Inc*., 670 F. Supp. 2d 349, 356 (D. Del. 2009).  The public interest factors are: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easier, quicker, or less expensive; (3) court congestion; (4) local interest in the controversy; (5) public policies of the fora; and (6) the trial judge's familiarity with the applicable state law.  *Id*.

This traditional balancing test is modified when, as found here, a valid forum selection clause applies to the dispute.  *In re McGraw-Hill Global Educ. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018).  "First, no weight is given to the plaintiff's choice of forum."  *Id*.  Second, the court does not consider the private interest factors, only the public interest factors.  *Id*.  Third, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules."

*Id.* (quoting *Atl. Marine Constr. Co. v. U.S. District Ct.*, 571 U.S. 49, 64 (2013)).  "In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain." *Atl. Marine*, 571 U.S. at 66.

In summary, the modified Section 1404(a) transfer analysis in the presence of a forum selection clause proceeds as follows: (1) is the forum selection clause valid; (2) could the action have been brought in the other district; and (3) do the public interest factors weigh in favor of transfer.

Multiple forum selection clauses pointing to different states apply to this dispute, and no party has challenged their validity.  In addition, no party argues that this action could not have been brought in Florida, assuming a forum selection clause in favor of another state did not apply. Accordingly, the Court is left only with the third prong—a balancing of the public interest factors. Before conducting this analysis, however, the Court must determine which forum selection clause governs this dispute.

### A.  The Governing Forum Selection Clause

Perma-Liner asserts a breach of contract claim based on the same facts and nearly identical restrictive covenants found in the four agreements.  Thus, all of the agreements are equally relevant to Perma-Liner's claim.  But two of those agreements—the 2012 Employment Agreement and 2012 Seller Covenant Agreement (collectively, the "2012 Agreements")—have a forum selection clause in favor of Florida, and one of the agreements—the 2019 EARA Cancellation Agreement— has a forum selection clause in favor of Delaware.  (D.I. 26-1, Ex. 1 § 14, Ex. 2 § 6, Ex. 4 § 10). Because it would be a waste of judicial resources to piecemeal this litigation and enforce all of the competing forum selection clauses, the Court must determine which forum selection should take primacy.  *Jones v. Custom Truck & Equip., LLC*, 2011 WL 250997, at *5 (E.D. Va. Jan. 25, 2011).

The Court concludes that the Delaware forum selection clause takes primacy here, but not for the reason Perma-Liner argued. Perma-Liner argues that the combination of a reaffirmation clause and integration clause in the EARA Cancellation Agreement means that the Delaware forum selection clause in the EARA Cancellation Agreement supersedes the Florida forum selection clauses in the 2012 Agreements. (D.I. 24 at 5-6). But neither the plain language of clauses nor the case cited by Perma-Liner supports its proposition.

The reaffirmation clause states in relevant part:

> The EARA Holder further acknowledges and agrees that … all non-competition, non-solicitation, non-disparagement and confidentiality provisions in any agreement between the EARA Holder and the Company or any of its affiliates remain in full force and effect and are hereby re-affirmed by the EARA Holder in this Agreement, including, without limitation, the EARA Holder's restrictions under that certain [Employment Agreement], dated as of December 28, 2012, between the Company and the EARA Holder….and that certain [Seller Covenant Agreement], dated as of December 28, 2012, between the Company and the EARA Holder ….

(D.I. 26-1, Ex. 4 § 2). Thus, the reaffirmation clause does no more than acknowledge that the restrictive covenants in the 2012 Agreements "remain in full force and effect." (*Id.*). The integration clause states:

> This Agreement (*and the agreements referred to herein*) constitutes the entire agreement with respect to subject matter hereof and supersedes all prior understandings, agreements or representations by and between the parties, written or oral, with respect to the subject matter hereof.

(*Id.* at § 12 (emphasis added)). Note that the Employment Agreement and the Seller Covenant Agreement are two of the "agreements referred to herein." As a result, the EARA Cancellation Agreement cannot supersede the 2012 Agreements, because all three agreements together "constitute[] the entire agreement" of the parties that "supersedes all prior understandings."

In addition, the *Newport* case cited by Perma-Liner does not stand for the proposition that an integration clause allows the forum selection clause in the same agreement to supersede a forum

selection clause in an earlier agreement.  *See* D.I. 24 at 5-6 (citing *Newport Disc, Inc. v. Newport Elec., Inc.*, 2013 WL 987936 (Del. Super. Mar. 11, 2013)).  If anything, *Newport* appears to work against Perma-Liner's position.

In *Newport*, defendants argued that a forum selection clause in a purchase agreement executed first governed a breach of contract claim based on termination agreements executed second, because the termination agreements incorporated the purchase agreement by reference. *Newport*, 2013 WL 987936, at *2.  The court rejected defendants' argument, holding that the forum selection clause in the purchase agreement did not apply because plaintiffs' claims arose out of the termination agreements, which had integration clauses, and plaintiffs' claims "could be resolved without reference to" the purchase agreement.  *Id*. at *5.  Thus, the *Newport* court did not rely on an integration clause to extend the reach of a forum selection clause, but instead did the opposite. Indeed, *Newport* stated that the "mere reference" to another agreement as part of the "'entire agreement' of the parties, without an 'express provision' incorporating the forum selection clause…should be interpreted to limit the forum selection clause to the agreement containing the forum selection clause."  *Id*. at *4.

The Court concludes that the Delaware forum selection takes precedence over the Florida forum selection clauses for a different reason: When there are two competing forum selection clauses, courts will favor enforcement of the mandatory clause over the permissive one.  *See*, *e.g.*, *Granite Re, Inc. v. N. Lines Contracting, Inc.*, 478 F. Supp. 3d 772, 780 (D. Minn. 2020) (collecting cases); *Custom Truck*, 2011 WL 250997, at *6.  "A mandatory forum selection clause requires a plaintiff to sue in the designated forum, while a permissive clause authorizes, but does not require, the plaintiff to sue in that district."  *Id*. at *5.  If a court wants to avoid piecemeal litigation, then only one forum selection clause can be enforced.  The mandatory forum selection clause requires

the designated forum, whereas the permissive forum selection clause is optional. Therefore, the mandatory forum is favored. *Id*.

Here, the Delaware forum selection clause states, "Each party hereby consents to the **exclusive jurisdiction** of the state and federal courts located in the State of Delaware for any dispute arising under or relating to this Agreement." (D.I. 26-1, Ex. 4 § 10) (emphasis added). This is a mandatory forum selection clause. *See Samuels v. Medytox Solutions, Inc.*, 2014 WL 4441943, at *5 (D.N.J. Sept. 8, 2014) (stating that a forum selection clause designating an "exclusive jurisdiction" is mandatory). The Florida forum selection clauses state, in relevant part with one minor difference, that "any action or proceeding to enforce or arising out of this agreement **may be commenced** in the state court, or in the United States District Court in Florida."[2] (D.I. 26-1, Ex. 1 § 14, Ex. 2 § 6) (emphasis added). These are permissive forum selection clauses. *See Nuss v. Sabad*, 2016 WL 4098606, at *6 (N.D.N.Y. July 28, 2016) ("It is … well settled that the use of the word 'may' when designating permissible fora as locations where actions 'may be brought' (or, as in this case, 'may be commenced') makes that forum selection clause permissive."). Because the Delaware forum selection clause is mandatory and the Florida forum selection clauses are permissive, the Court will consider only the Delaware forum selection clause in conducting the rest of the Section 1404(a) transfer analysis.

### B. The Public Interest Factors

As stated above, the public interest factors are: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easier, quicker, or less expensive; (3) court congestion; (4) local interest in deciding local controversies at home; (5) public policies of the

---

[2]     The Employment Agreement specifies "Tampa, Florida" as the permitted forum whereas the Seller Covenant Agreement merely specifies "Florida." (D.I. 26-1, Ex. 1 § 14, Ex. 2 § 6).

fora; and (6) the trial judge's familiarity with the applicable state law.  *Mallinckrodt*, 670 F. Supp. 2d at 356.  Each factor is addressed in turn.

    *Enforceability of the Judgment*.  This factor can favor transfer when a defendant resides in the transferee forum and plaintiff seeks injunctive relief that will restrain his activities there.  *See N. Am. Rescue Products Inc. v. Bound Tree Med*., 2008 WL 304881, at *2 (D.S.C. Jan. 31, 2008) (factor favors transfer to Ohio because plaintiff seeks injunctive relief over a defendant that resides in Ohio); *Law Bulletin Pub., Co. v. LRP Publications, Inc*., 992 F. Supp. 1014, 1021 (N.D. Ill. 1998) (request for injunctive relief favors transfer to Florida because "the Florida court would be 'closer to the action'" and, therefore, "the better forum to enforce and monitor any injunctive relief awarded").  Here, Perma-Liner seeks preliminary and permanent injunctive relief restricting D'Hulster from engaging in certain activities, and D'Hulster resides in Florida.  (*See* D.I. 26 Prayer for Relief).  In addition, the Court notes that when the restrictive covenants identify a specific state where D'Hulster is prohibited from competing, it includes Florida but not Delaware.[3]  (D.I. 26-1, Ex. 1 § 7, Ex. 2 § 1, Ex. 4 § 7).  Accordingly, this factor weighs in favor of transfer.

    *Practical Considerations*.  The parties, the majority of witnesses, and the evidence are all located in the Middle District of Florida.  The only connection to this state is Perma-Liner's incorporation in Delaware.  Meanwhile, the course of the Covid-19 pandemic remains uncertain and vaccine access, in its earliest stages, remains restricted.  As a result, litigation in Delaware will likely require interstate travel at a time when the Center for Disease Control recommends against

---

[3]    The restrictive covenants in three of the agreements have an interesting funnel approach to identifying the geographic scope.  They start by identifying "the World," "the United States," and ten specific states, then offer in the alternative 200 miles from "each office, facility, or business activity of Seller."  (D.I. 26-1, Ex. 1 § 7, Ex. 2 § 1, Ex. 4 § 7).  The ten states are California, Florida, Minnesota, Pennsylvania, Washington, Ohio, Colorado, Kentucky, Missouri, and Michigan.  (*Id*.).

it.  Thus, practical considerations favor having the trial in Florida where the parties, witnesses, and

evidence are concentrated, making it easier, less expensive, and safer for public health.

     *Court Congestion*.  I agree with Perma-Liner that this factor is neutral, because both

Districts experience a similar level of court congestion on a per-judgeship basis.  (D.I. 24 at 10 n.

7).  Per judgeship, the Middle District of Florida has, as of September 30, 2020, 584 pending cases

and 603 weighted filings.[4]   Meanwhile, the District of Delaware has per judgeship 608 pending

cases and 903 weighted filings.  *Id*.  Civil cases in the Middle District of Florida have an average

of 6.2 months from filing to disposition and 24.4 months from filing to trial.  *Id*.  Meanwhile, civil

cases in the District of Delaware have 6.4 months from filing to disposition and 28.4 months from

filing to trial.  In a recent opinion, I stated my view on this issue.

> District Judge Miller of the Eastern District of Arkansas testified before
> Congress on behalf of the federal judiciary on June 30, 2020, where the Judicial
> Conference of the United States recommended one new judgeship in Delaware
> to go along with the four existing ones; the same testimony recommended six
> new judgeships in the Middle District of Florida to go along with the fifteen
> existing ones.  The recommendations suggest that the Middle District has a
> greater need for additional judgeships, but as the parties have not argued the pros
> and cons of using these recommendations, I do not rely upon them.

*Express Mobile, Inc. v. Web.com Group, Inc*., 2020 WL 3971776, at *4 (D.Del. July 14, 2020).  I

concluded there that "court congestion" was neutral.

     *Local Interests*.  Here, the local interest factor favors Florida.  The agreements were

negotiated and executed in Florida between a Florida resident (D'Hulster) and a Delaware

corporation with its principal place of business in Florida (Perma-Liner).  The allegedly breaching

conduct involves D'Hustler's establishment of a California limited liability company with a

---

[4]     *See* U.S. District Courts—Federal Court Management Statistics–Profiles—During the 12-
Month  Periods  Ending  September  30,  2015  Through  2020,  available  at
https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2020.pdf.

principal place of business in Florida.[5]   The local interest factor favors the state where the individual against whom a non-compete clause will be enforced lives and works.  *See CentiMark Corp. v. Jacobsen*, 2011 WL 6000719, at *7 (W.D. Pa. Nov. 30, 2011) (holding that the local interest factor favored Georgia where the former employee allegedly breaching a non-compete lived and worked); *Healthcare Serv. Grp., Inc. v. Moreta*, 2019 WL 6117353, at *7 (E.D. Pa. Nov. 15, 2019) (concluding that the local interest factor favored the state where most of the conduct allegedly violating the non-compete clause occurred).   In contrast, the local interest factor does not favor Delaware when "the only known relationship between Delaware and the claims or parties is that [plaintiff is] incorporated in Delaware," but the claims "do not arise out of or relate to" plaintiff's status as a Delaware corporation."  *Roe v. Wyndham Worldwide, Inc.*, 2020 WL 707371, at *7 (D. Del. Feb. 12, 2020).

*Public Policies*.   Two of the restrictive covenants Perma-Liner seeks to enforce are governed by Florida law and one is governed by Delaware law.  (D.I. 26-1, Ex. 1 § 14, Ex. 2 § 6, Ex. 4 § 10).   The two states, however, do not have the same public policy with respect to non-compete clauses.  As one court explained:

> [T]he Florida non-compete statute … has been dubbed the most "pro-business" non-compete statute in the country.   Hank Jackson, Florida's NonCompete Statute: "Reasonable" or "Truly Obnoxious?", The Florida Bar Journal, March 2018, at 10.   Rather than simply setting forth the typical elements to enforce a non-compete, such as limitations upon time, area, and line of business, and requiring a legitimate business interest justification, the Florida statute contains two additional provisions that favor the employer by: (1) preventing consideration of harm to the employee and (2) prohibiting any rule of contract construction that requires the court to construe a restrictive covenant narrowly against the constraint or the drafter of the contract. Fla. Stat § 542.335(1)(c).[6]

---

[5]     Presumably Paramount also has employees who work and reside near the company's principal place of business in Florida, which means the outcome of this case will affect Florida citizens beyond the parties in this case.

[6]     The current citation for relevant portions of the Florida statute is Fla. Stat. § 542.335(1)(g) & (h).

> Numerous courts have criticized, refused to follow or otherwise limited application of Florida's non-compete statute.

*In re Mainous*, 610 B.R. 916, 922 (Bkr. S.D. Ala. 2019). Given that Florida's non-compete statute has been deemed an outlier, Florida likely has a strong public policy interest in ensuring that its non-compete statute is applied in the way intended. This strong public policy favors transfer to Florida. Delaware does not have a similarly strong public policy that would disfavor transfer. Although Delaware has a clear public policy "to promote incorporation in Delaware and to provide respected courts for the resolution of business disputes involving Delaware corporations, … that is a policy that is implemented through Delaware's state courts," not the federal system. *NXP USA, Inc. v. IMPINJ, Inc*., 2020 WL 5665257, at *5 (D. Del. Sept. 23, 2020). Accordingly, this factor weighs in favor of transfer.

*Familiarity with State Law.* A district judge in the District of Florida undoubtedly has more occasion to apply Florida law than a district judge here. But there is no reason to believe that this Court is unable to render an informed ruling under Florida law. Further, application of Delaware law is likely also required, as the action includes a restrictive covenant governed by Delaware law. Therefore, this final factor favors neither forum.

In summary, the majority of the factors favor transfer, no factor weighs against transfer, and two factors are neutral. Notably, several factors weigh strongly in favor of transfer, including the localized nature of the restrictive covenants, Florida's unique public policy regarding how restrictive covenants under its laws should be enforced, and the ongoing uncertainty around interstate travel during a global pandemic that operates according to its own rules and timeframe. Weighing all of the public interest factors together, the Court concludes that this is one of those "unusual cases" where the interests of justice are served by favoring the forum identified in a

permissive forum selection clause (i.e. Florida) over the forum identified in a mandatory forum selection clause (i.e. Delaware).  Accordingly, the Court grants the motion to transfer.

## III.   CONCLUSION

For the foregoing reasons, D'Hulster's motion to transfer (D.I. 17) is granted.  The other pending motions (D.I. 31, 33, 38) are dismissed with leave to refile in the transferee district.

An appropriate order will be entered.